[Civ. No. 15075. First Dist., Div. One. Mar. 27, 1952.]

COMMERCIAL CASUALTY INSURANCE COMPANY OF NEWARK, NEW JERSEY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and JOHN F. PIDGEON, Respondents.

Henry G. Sanford for Petitioners.

Tipton, Weingand & Tipton as Amicus Curiae on behalf of Petitioners.

Edmund J. Thomas, Jr., and T. Groezinger for Respondents.

BRAY, J.—This petition for review of an award by the Industrial Accident Commission to John F. Pidgeon raises identically the same legal questions raised in *Commercial Casualty Insurance Co.* v. *Industrial Accident Com. and John T. Porter*, No. 15109, this day decided, *ante*, p. 83 [242 P.2d 13]), principally, was the contract of hire entered into in California, thereby giving the Industrial Accident Commission jurisdiction of the claim? No question is raised as to the disability.

FACTS

The facts are almost identical to those in the Porter case although the parties (except the insurance carriers) are different. Petitioner was injured while employed as a welder by Morrison-Knudsen International Company (hereafter called Morrison-Knudsen) at Inginiyalgala, Ceylon. International Engineering Company (hereafter called Engineering) is a subsidiary of Morrison-Knudsen and as one of its services selects personnel for certain of its foreign projects. Pidgeon resided in Baldwinsville, New York, and had recently returned from working for Morrison-Knudsen in Afghanistan. He at no time was in California. Engineering at San Francisco received a telegram from Morrison-Knudsen instructing it to hire Pidgeon as welder subforeman at $600 and to contract through the Morrison-Knudsen office in New York. From San Francisco, Engineering in Morrison-Knudsen's name wired Pidgeon at Baldwinsville offering him a position in Ceylon as service foreman at $600 per month and requested him to advise if interested. Pidgeon wired that he was interested. Engineering then wrote from San Francisco to Pidgeon at Baldwinsville enclosing "processing papers necessary for your trip to Ceylon" and instructing him to follow the enclosed processing procedure. Included was a Memorandum

of Agreement which, among other matters, stated that upon its being signed by him and accepted in writing by Engineering at San Francisco it would become a binding State of California agreement. (See Porter case for detail.) Nine days later Engineering again wrote Pidgeon asking how far along he was in accomplishing his processing for Ceylon and as soon as he passed the physical examination to return signed visas with his passport so it could notify "project" of his approximate departure. In the meantime, Pidgeon wrote Engineering asking what the status of a service foreman was, as he had never heard of that title. To this Engineering replied stating that he would be employed as welder subforeman and directing his attention to a particular paragraph of the "Employment Contract," sample of which was enclosed. Apparently Pidgeon had returned the Memorandum of Agreement which was included in the "processing papers" theretofore sent Pidgeon. These were again sent to Pidgeon "for additional signatures in the spaces marked." He was instructed to return all four copies for "our signature" and was informed that one copy would be returned to him when the departure date was established. He was also requested to forward his passport, visa applications and other material, as "we must have all the forms in our possession before a visa application and transportation arrangements can be made." Pidgeon signed the four copies of the Memorandum of Agreement in Baldwinsville and returned them to San Francisco and asked what his chances of advancement might be in Ceylon. In the reply letter Engineering stated that no promises could be made. "You are being employed as a welder, not foreman, at $600 per month." Subsequently Engineering wrote a firm in New York: "Mr. John Pidgeon has been employed by the International Engineering Company, Inc., for work on the construction" of a dam in Ceylon and asked the firm to secure the necessary visas. Engineering in San Francisco then wrote Pidgeon to go to New York where his passport and transportation would await him, and was instructed to take a certain plane for his trip to Ceylon. The next day Engineering signed the Memorandum of Agreement in San Francisco and from there sent two signed copies thereof to Pidgeon at Baldwinsville with instructions to take one with him to the job and keep the other. On arriving in Ceylon Pidgeon signed the Employment Agreement. The Memorandum of Agreement signed by the parties and the Employment

Agreement referred to therein and of which a copy was sent Pidgeon are identical, so far as the questions here involved are concerned with those in the Porter case. (See discussion of the two instruments in the Porter case, substituting Morrison-Knudsen for International Bechtel and Engineering for San Francisco Bechtel.) The only practical difference in the facts of the two cases is that Pidgeon did not sign a second Memorandum of Agreement in New York as did Porter. The commission found, as in the Porter case, that the contract was entered into in San Francisco.

On the authority of the Porter case, in which we held under almost identical circumstances that the contract of hiring was made in California, thereby giving the Industrial Accident Commission jurisdiction of the employee's claim, the award is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 26, 1952, and petitioners' application for a hearing by the Supreme Court was denied May 22, 1952.